| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* COLEEN DEGROAT<br><br>Plaintiffs,<br><br>v.<br><br>BEYOND REPS, INC., IRONROD HEALTH, and CARDIAC MONITORING SERVICES, LLC,<br><br>Defendants. | Civ. Action No. 20 CV1262<br><br>**QUITAM COMPLAINT<br>FILED UNDER SEAL<br>PURSUANT TO<br>31 U.S.C. § 3730(b)2<br>DEMAND FOR JURY TRIAL** |

FILED SEP 1 0 2020

## COMPLAINT

On behalf of the United States of America, Relator Coleen DeGroat files this *qui tam* Complaint against Defendants BEYOND REPS, INC., IRONROD HEALTH, and CARDIAC MONITORING SERVICES, LLC, and alleges as follows:

### INTRODUCTION

1. This is an action brought by Relator Coleen DeGroat to recover treble damages and civil penalties on behalf of the United States of America arising from an unlawful scheme by Defendants BEYOND REPS, INC. ("Beyond Reps"), IRONROD HEALTH ("IronRod"), and CARDIAC MONITORING SERVICES, LLC ("Cardiac Monitoring") (collectively "Defendants") to make false claims to obtain improper reimbursements from Medicare and other Government-funded health insurance plans.

2. Specifically, Defendants provide remote cardiac monitoring services to Medicare patients and their physicians located throughout the states of Arizona, California, Florida, Georgia,

1

Michigan, and Texas, but unlawfully route their reimbursement claims through their office in the State of New York to receive higher reimbursements.

3. Defendants also unlawfully provide kickbacks to cardiologists who elect to use the Defendants' remote cardiac monitoring services.

4. Defendants' conduct alleged herein violates the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq., as amended ("FCA") and the Anti-Kickback Statute ("AKS), 42 U.S.C. § 1320a-7b(b).

## **PARTIES**

5. Relator Coleen DeGroat was an administrative assistant and revenue cycle manager for the Defendants from June 2018 until January 2020.

6. Relator's duties included preparing and submitting Medicare reimbursement claims for the Defendants. Relator performed her duties from an office in Montour Falls, New York where, until approximately April 2019, she was the only employee.

7. Relator's employment terminated in January 2020 when she declined to relocate to the Defendants' new office in Rye, New York, approximately 250 miles away after only being asked two days prior.

8. Relator has a degree from Finger Lakes Community College and a New York State certification in Medical Billing and Coding. She currently resides in Sarasota County, Florida.

9. Defendant IronRod is a remote diagnostics company located in Phoenix, Arizona. According to their website, they provide "remote monitoring, reporting and billing" for physicians whose patients require cardiac monitoring.

10. Upon information and belief, IronRod does not appear to be registered under that name in Arizona, Delaware or New York State although its website provides the following contact

address: 2999 N. 44th St., Suite 145, Phoenix, Arizona 85018 which it shares with Defendant Beyond Reps.

11. According to information and belief, IronRod is either a wholly-owned subsidiary of Beyond Reps or Beyond Reps is doing business as "IronRod."

12. Defendant Beyond Reps, Inc. is a Delaware corporation with a registered business address at 2999 N 44th St. #145, Phoenix, Arizona 85018.

13. In addition to sharing a business address, Beyond Reps and Iron Rod also share a Chief Executive Officer: Andrew Nash.

14. The Arizona Corporation Commission website lists Andrew Nash as the Director, President and Chief Executive Officer ("CEO") of Beyond Reps and Iron Rod's website identifies Andrew Nash as its "Founder and CEO."

15. Defendant Cardiac Monitoring Services, LLC is a New York limited liability company. According to its registration with the New York Department of State's Division of Corporations, Cardiac Monitoring was originally registered in March, 2018 and is located in Westchester county.

16. However, Relator worked for Cardiac Monitoring between June 2018 and January 2020, during which time, their only office was at 232 West Main St., Montour Falls, New York in Schuyler County, New York.

17. According to hipaaspace.com and opennpi.com, Cardiac Monitoring is located in Montour Falls.

18. Upon information and belief, Cardiac Monitoring is a wholly-owned subsidiary of Beyond Reps.

## JURISDICTION AND VENUE

19. Venue and jurisdiction are the same under the FCA. 31 U.S.C. § 3732. An action may be brought in any judicial district in which any Defendants may be found or in which any proscribed act occurred. 31 U.S.C. § 3732(a).

20. The United States District Court for the Western District of New York has jurisdiction and venue for any Complaint brought in the matter because one of the Defendants is located in this district and many of the proscribed acts occurred in this district.

21. Relator is unaware that the allegations in this Complaint have been publicly disclosed. Further, to the extent that any of the information in this Complaint has been publicly disclosed, Relator's allegations in this Complaint are not based on such public disclosures.

22. Additionally, Relator is an original source of the information upon which Relator's allegations are based because she has direct and independent knowledge of it.

23. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and/or a written disclosure of substantially all material evidence and material information in their possession contemporaneous with the filing of the Complaint.

24. Relator has complied with this provision by serving his pre-suit Disclosure Statement with attached exhibits upon MaryEllen Kresse, Assistant United States Attorney for the Western District of New York on August 12, 2020.

25. In further compliance with 31 U.S.C. §3730(b)(2), relator shall, contemporaneously with the filing of this Complaint, serve copies of this Complaint upon the MaryEllen Kresse, Assistant United States Attorney for the Western District of New York and on the Honorable William Barr, Attorney General of the United States.

26. In further compliance with 31 U.S.C. § 3730(b)(2), this Complaint is being filed *in camera* and will remain under seal for a period of at least sixty days and shall not be served on the Defendants until the Court so orders.

## **LEGAL FRAMEWORK**

### A. **The Federal False Claims Act**

27. Originally enacted in 1863, Congress substantially amended the FCA in 1986. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval;" or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim;" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. 3729(a)(1)(A), (B), (G). Any person found to violate these provisions is liable for a civil penalty of up to $11,000 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government.

28. Significantly, the FCA imposes liability where the conduct is merely "in reckless disregard of the truth or falsity of the information" and further clarifies that "no proof of specific intent to defraud is required." 31 U.S.C. 3729(b)(1). The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that — (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor,

grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government — (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

29. The FCA empowers private persons with information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery – i.e. a *qui tam* provision. The complaint must be filed under seal without service on any Defendants. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

### B. Federally Funded Health Insurance Programs

#### i. Medicare

30. Medicare is a federally-funded health insurance program for the elderly and persons with certain disabilities, providing both hospital insurance. Medicare Part A covers the cost of inpatient hospital services and post-hospital nursing facility care, and medical insurance. Medicare Part B covers the cost of the physician's services such as services to patients who are hospitalized, if the services are medically necessary and personally provided by the physician. Medicare payments come from the Medicare Trust Fund, which is funded primarily by payroll deductions taken from the United States work force through mandatory Social Security deductions.

31. Medicare is generally administered by the Centers for Medicare and Medicaid Services ("CMS"), which is an agency of the Department of Health and Human Services ("HHS").

CMS establishes rules for the day-to-day administration of Medicare. CMS contracts with private companies to handle the day-to-day administration of Medicare.

32. CMS, through contractors, maintains and distributes fee schedules for the payment of physician services. These schedules specify the amounts payable for defined types of medical services and procedures.

33. Although Medicare is a national program, it adjusts fee-for-service payments to providers for geographic differences in the cost of providing care.

34. CMS adjusts Medicare fee-for-service payments to practitioners and hospitals according to the geographic location in which the provider practices, recognizing that some costs are beyond the providers' control.

35. Payments in high-cost areas are increased relative to the national average, and payments in low-cost areas are reduced. This known as a "geographic adjustment factor" and is specifically authorized in 42 C.F.R. § 416.26.

### ii. Medicaid

36. Medicaid is a state and federal assistance program to provide payment of medical expenses for low-income patients. Medicaid was created in 1965 in Title XIX of the Social Security Act.

37. Funding for Medicaid is shared between the Federal Government and state programs that choose to participate in Medicaid.

38. At all relevant times to this matter, applicable Medicaid regulations relating to coverage of claims by providers and physicians have been substantially similar in all material respects to the applicable Medicare provisions described above.

7

### iii. Tricare

39. TRICARE is a federal program which provides civilian health benefits for military personnel, military retirees, and their families. TRICARE is administered by the Department of Defense and funded by the Federal Government. *See* 32 C.F.R. 199.17. At all relevant times to this matter, applicable TRICARE regulations relating to coverage of claims by providers and physicians have been substantially similar in all material respects to the applicable Medicare provisions described above.

40. Medicare, Medicaid, TRICARE, and other similar federal programs are referred to collectively herein as "Government-funded health plans."

### C. The Anti-Kickback Statute

41. Government-funded health plans depend on physicians and other health care professionals to exercise independent judgment in the best interests of patients. Although monetary and other incentives tied to referrals are commonly accepted and legal in many businesses, such acts can corrupt the healthcare industry and harm federal programs. When a physician refers a patient to a provider because of certain financial self-interests, the physician is not necessarily making the decision in the patient's best interests. Unfair competition results when honest providers must compete with those who unlawfully pay to generate business. This systemic corruption of Government-funded plans defrauds the public.

42. Given these concerns, Congress first passed the AKS in 1972. Codified at 42 U.S.C. § 1320a-7b, the AKS is a criminal statute which makes it a felony, with a fine up to $250,000 and imprisonment up to five years, for anyone to solicit, receive, offer, or pay remuneration in exchange for referring patients to receive certain services that are paid for by the Government.

43. The 2010 Patient Protection and Affordable Care Act (the "ACA") changed the language of the AKS to provide that claims submitted in violation of the statute automatically constitute false claims for purposes of the FCA (31 U.S.C. §§ 3729–3733).

44. Further, the new language of the statute provides that "a person need not have actual knowledge...or specific intent to commit a violation," eliminating – or severely limiting – a provider's ability to successfully argue they did not know they were violating the FCA because they were unaware of the AKS. 42 U.S.C. § 1320a-7a(h).

45. Violations of the AKS are not limited to cash payments in return for referrals. Where, for example, a referring physician receives administrative services at no or below-market cost in exchange for the referrals, an AKS violation exists.

## REMOTE CARDIAC MONITORING

46. As noted above, the Defendants provide remote cardiac monitoring services. Cardiac monitoring is simply a way for a physician to monitor a patient's heart rhythm and activity over a defined period of time. It is standard practice in diagnosing cardiac arrhythmias and is also helpful in evaluating and managing medications and their effects on a patient's condition.

47. Cardiac monitoring has long been a tool available to physicians for evaluating patients in the office or through a mobile cardiac telemetry device which continuously monitors the patient and stores the information until the information can be uploaded and analyzed the next time the patient comes to the physician's office.

48. In recent years, monitoring devices are available that continuously transmit the data via the internet or other data networks to a remote cardiac monitoring service such as the Defendants.

9

49. The remote cardiac monitoring services receives the information from the mobile device and sends it to the patient's physician for analysis. Both the cardiac monitoring service and the physician can obtain Medicare reimbursement for their service. There are, however, legal requirements.

50. Providers of remote cardiac monitoring may not pay money or give anything of value to a physician in exchange for the physician referring his or her Medicare patients to the monitoring service.

51. Also, providers of remote cardiac monitoring may not route their reimbursement claims through offices in high-cost areas with a positive geographic adjustment factor simply to increase their profits even though the patients and their physicians have no link or connection to the geographic area in question. *See* 42 C.F.R. § 416.26 (establishing that reimbursement rates may vary according to the geographic location of the provider.).

## **COURSE OF CONDUCT**

### A. Medicare Forum Shopping

52. According to the Relator, Defendants provide remote cardiac monitoring services to Medicare patients and their physicians located throughout the States of Arizona, California, Florida, Georgia, Michigan, and Texas, but unlawfully route their reimbursement claims through their office in the State of New York to increase their profits as a result of the favorable geographic adjustment factor. Specifically, according to Relator, for most of her time working for the Defendants, she was the only employee at the New York office in Montour Falls through which the Medicare reimbursement claims were being processed. Even though no medically reimbursable service was provided out of the New York office and even though the patients and

their physicians had no link to the New York area, Defendants nevertheless routed the reimbursement claims through New York to receive higher reimbursements.

**B.     Kickbacks to Physicians**

53.     Defendants also unlawfully provide kickbacks to physicians in the form of free or below market administrative services.

54.     Specifically, Defendants provide reimbursement claim processing to physicians in exchange for those physicians utilizing the Defendants' remote cardiac monitoring services.

55.     Amanda Bruinekool, a billing specialist with Beyond Reps, admitted to Relator that the physicians refer their patients to the Defendants for remote cardiac monitoring because Defendants provide coding and billing services in return.

56.     Cardiac clinics to whom Defendants gave unlawful kickbacks in return for referrals include, but may not be limited to:

- Arizona Arrhythmia Consultants in Scottsdale, Arizona,
- Arizona Heart Rhythm Center in Phoenix, Arizona
- Allen Park Cardiology in Allen Park, Michigan;
- Arizona Heart Doctors in Arizona;
- Arizona Cardiovascular & Vein Clinic in Mesa, Arizona;
- Chan Heart Rhythm Institute in Mesa, AZ;
- Cochise Heart Center in Sierra Vista, Arizona;
- Cardiovascular Associates of Santa Cruz in Santa Cruz, California;
- Cardiovascular Group in Georgia;
- Humble Cardiology Associates in Humble, Texas;

- Heart Rhythm Associates in Shenandoah, Texas;

- Lakeside Heart & Vascular Center in Lake Havasu City, Arizona;

- Pima Heart Center in Tucson, Arizona;

- South Mountain Cardiology in Tempe, Arizona; and

- Texas Cardiology Association of Houston in Houston, Texas.

## **DEFENDANTS' IMPROPER CONDUCT CAUSED SUBSTANTIAL DAMAGE TO THE GOVERNMENT**

57. Defendants violated the FCA by knowingly and improperly routing their reimbursement claims through their New York office for the higher reimbursement even though neither the patients nor their physicians had any links to New York. Defendants also violated the FCA and the AKS by providing valuable kickbacks to physicians in exchange for referrals. Through these schemes, Defendants damaged the Government significantly by causing millions of dollars in false or fraudulent claims for reimbursement.

## **CONCLUSION**

58. Defendants caused the Government to incur substantial damages by presenting, making, using or causing to be presented, made or used thousands of False Claims to Government-funded health plans and in connection with their fraudulent schemes. The False Claims resulted in remuneration unlawfully received by the Defendants. More specifically, Defendant violated numerous provisions of the FCA, including, but not limited to, the following: 31 U.S.C. § 3729(a)(1)(A); 31 U.S.C. § 3729(a)(1)(B); 31 U.S.C. § 3729(a)(1)(C); 31 U.S.C. § 3729(a)(1)(D); 31 U.S.C. § 3729(a)(1)(G) and the AKS, 42 U.S.C. § 1320a-7a(h).

59. In light of the foregoing, Defendants are liable to the United States for civil penalties and statutory damages.

60. The estimated damages to the United States caused by the False Claims alleged herein are significant.

## CLAIMS FOR RELIEF
### COUNT I
### False Claims Act: Presentation of False Claims
### 31 U.S.C. § 3729(a)(1)(A)

61. Relator repeats and incorporates by reference the allegations above as if fully contained herein.

62. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendants have "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval" in violation of 31 U.S.C. § 3729(a)(1).

63. As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

### COUNT II
### False Claims Act: Making or Using a False Record
### or Statement to Cause Claim to be Paid
### 31 U.S.C. § 3729(a)(1)(B)

64. Relator repeats and incorporates by reference the allegations above as if fully contained herein.

13

65. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement – *i.e.*, the false certifications and representations made or caused to be made by the Defendants – to get a false or fraudulent claim paid or approved by the Government" in violation of 31 U.S.C. § 3729(a)(2).

66. As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT III
### False Claims Act: Conspiracy to Commit a Violation
### 31 U.S.C. § 3729(a)(1)(C)

67. Relator repeats and incorporates by reference the allegations above as if fully contained herein.

68. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants and its agents have "conspire[d] to commit a violation of subparagraph (A), (B), (D)...or (G)" in violation of 31 U.S.C. §3729(a)(1)(C).

69. As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after

November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

### COUNT IV
### False Claims Act: Knowingly Delivers Less Than All of
### Government's Property in Defendants' Possession
### 31 U.S.C. §3729(a)(1)(D)

70. Relator repeats and incorporates by reference the allegations above as if fully contained herein.

71. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants "ha[d] possession, custody, or control of property or money used, or to be used, by the Government and knowingly deliver[ed], or cause[d] to be delivered, less than all of that money or property" in violation of 31 U.S.C. §3729(a)(1)(D).

72. As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

### COUNT V
### False Claims Act: Knowingly Conceals or Improperly Avoids an Obligation
### to Pay Money to the Government
### 31 U.S.C. §3729(a)(1)(G)

73. Relator repeats and incorporates by reference the allegations above as if fully contained herein.

74. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases and obligation to pay or transit money or property to the Government: in violation of 31 U.S.C. §3729(a)(1)(G).

75. As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## PRAYER FOR RELIEF

WHEREFORE, for each of these claims, the Qui Tam Plaintiff requests the following relief from each of the Defendants, jointly and severally, as to the federal claims:

a. Three times the amount of damages that the Government sustains because of the acts of Defendants;

b. A civil penalty of for each violation;

c. An award to the Qui Tam Plaintiff for collecting the civil penalties and damages;

d. Award of an amount for reasonable expenses necessarily incurred;

e. Award of the Qui Tam Plaintiff's reasonable attorneys' fees and costs;

f. Interest;

g. Such further relief as the Court deems just; and

## DEMAND FOR JURY TRIAL

Relator hereby demands trial by jury as to all issues.

Dated: September 9, 2020

By: _____
William L. Hurlock
MUELLER LAW, LLC
363 Bloomfield Ave, 2-C
Montclair, NJ 07042
Tel: (973) 233-8290
Fax: (973) 509-9521
william.hurlock@muellerlaw.com
ATTORNEYS FOR RELATOR