IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK



---

UNITED STATES OF AMERICA,
*ex rel.* COLEEN DEGROAT,

            Plaintiff,          20-CV-1262 (JLS)

v.

BEYOND REPS, INC., IRONROD HEALTH,
and CARDIAC MONITORING SERVICES, LLC,

                                      **UNDER SEAL**

            Defendants.

---

### UNITED STATES' NOTICE OF INTERVENTION IN PART
### FOR PURPOSES OF SETTLEMENT AND DECLINATION IN PART

Plaintiffs the United States of America ("United States"), Relator Coleen DeGroat ("Relator"), and the Defendants Beyond Reps, Inc. (d/b/a) IronRod Health and Cardiac Monitoring Services, LLC (collectively "Defendants") have reached a Settlement Agreement to resolve this action (*See* **Attachment 1**). In light of this agreement, and for the purpose of effectuating and formalizing that resolution, pursuant to the False Claims Act, 31 U.S.C. §§ 3730(b)(2) and (4), the United States respectfully advises the Court of their decision to intervene in part and decline in part for the purposes of settlement.

Specifically, the United States intervenes in this action with respect to civil claims predicated upon the factual allegations set forth in the Settlement Agreement's "Covered Conduct." *See* Attachment 1, Recital E. The United States declines intervention with respect to all other claims alleged in this action.

Under the terms and conditions of the Settlement Agreement, the United States and Relator will file a Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1) of the

Federal Rules of Civil Procedure following receipt from Defendant of the payment in Paragraph 1 of the Settlement Agreement.

In light of the Settlement Agreement reached among the parties, the United States does not presently intend to file a Complaint in Intervention but reserve the right to seek leave to file such a Complaint in the event that Defendants do not pay the full settlement amount consistent with the terms of the Settlement Agreement.

The United States understands that, upon their intervention in this action, the seal on the case will be lifted. However, the United States respectfully requests that the Court order the sealing of the motions to extend time to consider intervention, along with the supporting memoranda of law. The United States requests that such papers be filed under seal because they discuss the content and extent of the United States' investigation and were provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended.

A proposed order is submitted herewith.

                                              Respectfully submitted,

                                              TRINI E. ROSS
                                              United States Attorney

                                              DAVID M. CORIELL
                                              Assistant U.S. Attorney
                                              Western District of New York
                                              138 Delaware Avenue
                                              Buffalo, New York 14202
                                              (716) 843-5731
                                              david.coriell@usdoj.gov

DATED: January 31, 2023
              Buffalo, New York

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Notice of Intervention in Part for Purposes of Settlement and Declination in Part (filed *in camera* and under seal) was mailed by first class mail, postage prepaid to:

**Counsel for Defendants**

Christopher B. Harwood, Esq.
Morvillo Abramowitz Grand Iason & Anello PC
565 Fifth Avenue
New York, NY 10017

**Counsel for Relator**

William L. Hurlock, Esq.
Mueller Law LLC
363 Bloomfield Avenue, Suite 2-C
Montclair, New Jersey 07042

Attachment 1

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) and the Defense Health Agency (DHA), acting on behalf of the TRICARE Program (collectively, the "United States"); Beyond Reps, Inc. (d/b/a) IronRod Health and Cardiac Monitoring Services, LLC (collectively "IronRod"), and Relator Coleen DeGroat (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.      IronRod is a healthcare solutions company with headquarters in Phoenix, Arizona. IronRod provides remote cardiac monitoring services, among other services. IronRod renders or has rendered remote cardiac monitoring services through federally regulated independent diagnostic testing facilities ("IDTFs"), 42 C.F.R. § 410.33. IronRod's IDTFs are or were located in Phoenix, Arizona, Rye, New York, and Montour Falls, New York. The IDTFs located in Rye, New York and Montour Falls, New York are referred to collectively as the "New York IDTFs."

B.      The United States contends that IronRod submitted or caused to be submitted claims for payment for its remote cardiac monitoring services to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") and the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE").

C.      On September 10, 2020, Relator DeGroat filed a *qui tam* action in the United States District Court for the Western District of New York captioned *United States ex rel. DeGroat v. Beyond Reps, Inc. et al.*, 20-CV-1262 (W.D.N.Y.), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "First Qui Tam Action"). Relator DeGroat alleged that IronRod billed federal healthcare programs for services that were not performed at the New York

IDTFs or within New York State, and that IronRod had improper kickback relationships with physicians for whom it provided services. The United States intervened in part and declined to intervene in part in the First Qui Tam Action on January 31, 2023. The United States intervened in the First Qui Tam Action to the extent that it alleged that IronRod billed Medicare and TRICARE for services purportedly rendered from the Rye, New York IDTF before that IDTF was operational. The United States otherwise declined to intervene in the First Qui Tam Action.

D. On April 14, 2021, a second relator filed a *qui tam* action in the United States District Court for the Western District of New York pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Second Qui Tam Action"). The second relator alleged that IronRod billed Medicare for services that were not performed at the New York IDTFs or within New York State and that IronRod had improper kickback relationships with physicians for whom it provided services. The United States declined to intervene in the Second Qui Tam Action on January 27, 2023. 21-CV-494 (W.D.N.Y.).

E. The United States contends that it has certain civil claims against IronRod arising from its allegation that IronRod's IDTF located in Rye, New York was not operational until August 20, 2018, and that IronRod submitted claims to the Medicare and TRICARE programs for services purportedly rendered from the Rye, New York IDTF from June 1, 2018 to August 20, 2018, in violation of 42 C.F.R. § 410.33(g)(2). The United States further contends that from January 1, 2018 through April 30, 2021, IronRod billed Medicare and TRICARE for services rendered by non-physician personnel who lacked certain State licenses or credentials from a national credentialing body to perform such services, in violation of 42 C.F.R. § 410.33(c) and (g)(12). The conduct alleged in this paragraph is referred to below as the "Covered Conduct."

F. This Settlement Agreement is neither an admission of liability by IronRod nor a concession by the United States that its claims are not well founded.

2

G. Relator DeGroat claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. IronRod shall pay to the United States Six Hundred Seventy Three Thousand Two Hundred Dollars and Ninety Two Cents ($673,200.92) ("Settlement Amount"), of which Three Hundred Sixty Three Thousand Eight Hundred Ninety Two Dollars and Thirty Nine Cents ($363,892.39) is restitution, no later than Fourteen (14) days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Western District of New York. To the extent that IronRod does not pay the Settlement Amount within Fourteen (14) days of the Effective Date of this Agreement, IronRod shall also pay interest on any unpaid portion of the Settlement Amount at a rate of 3.88 per annum and such interest shall begin to accrue starting Fourteen (14) days after the Effective Date of this Agreement. For avoidance of doubt, if IronRod pays the full Settlement Amount within Fourteen (14) days of the Effective Date of this Agreement, IronRod shall not be obligated to pay any interest.

2. Subject to the exceptions in Paragraph 4 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, plus any interest due under Paragraph 1 in the event of nonpayment of the Settlement Amount within Fourteen (14) days of the Effective Date of this Agreement, the United States releases IronRod from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud

3

Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

3. Subject to the exceptions in Paragraph 4 below, and upon the United States' receipt of the Settlement Amount, plus any interest due under Paragraph 1 in the event of nonpayment of the Settlement Amount within Fourteen (14) days of the Effective Date of this Agreement, Relator DeGroat, for herself and for her heirs, successors, attorneys, agents, and assigns, releases IronRod from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct, as well as any civil monetary claim Relator DeGroat has asserted, could have asserted, or may assert in the future against IronRod for conduct pre-dating the Effective Date of this Agreement, under the False Claims Act, 31 U.S.C. §§ 3729-3733.

4. Notwithstanding the releases given in Paragraph 2 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability of individuals;

  g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

  h. Any liability for failure to deliver goods or services due.

 5. Relator DeGroat and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B), and that the Settlement Amount in Paragraph 1, above, is fair, adequate, and reasonable under all the circumstances. The United States will pay Relator DeGroat a share of the Settlement Amount ("Relator's Share") pursuant to a Relator's Share Agreement.

 6. Relator DeGroat, for herself, and for her heirs, successors, attorneys, agents, and assigns, releases IronRod, and its officers, agents, employees, and affiliates from any liability to Relator arising from the filing of the First Qui Tam Action, except with respect to any claim for reasonable expenses, attorneys' fees and costs under 31 U.S.C. § 3730(d).

 7. IronRod waives and shall not assert any defenses IronRod may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

 8. IronRod releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that IronRod has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

9. Upon the releases in Paragraphs 3 and 6 above becoming effective, IronRod releases Relator DeGroat from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that IronRod has asserted, could have asserted, or may assert in the future against Relator DeGroat, for Relator DeGroat's pursuit of claims under the False Claims Act for the Covered Conduct and Relator DeGroat's investigation and prosecution thereof.

10. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), TRICARE or Federal Employees Health Benefits Program (FEHBP) carrier or payer, or any state payer, related to the Covered Conduct; and IronRod agrees not to resubmit to any Medicare contractor, TRICARE or FEHBP carrier or payer, or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

11. IronRod agrees to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of IronRod, its present or former officers, directors, employees, shareholders, and agents in connection with:

        (1)    the matters covered by this Agreement;

        (2)    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

        (3)    IronRod's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in

          connection with the matters covered by this Agreement (including attorneys' fees);

(4)    the negotiation and performance of this Agreement;

(5)    the payment IronRod makes to the United States pursuant to this Agreement and any payments that IronRod may make to Relator DeGroat related to the First Qui Tam Action, including costs and attorneys' fees.

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and FEHBP (hereinafter referred to as Unallowable Costs).

    b.    <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for by IronRod, and IronRod shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by IronRod or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE Program, or FEHBP.

    c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: IronRod further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by IronRod or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the

Unallowable Costs. IronRod agrees that the United States, at a minimum, shall be entitled to recoup from IronRod any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by IronRod or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on IronRod's or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

       d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine IronRod's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

12. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 13 (waiver for beneficiaries paragraph), below.

13. IronRod agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

14. Upon the United States' receipt of the payment described in Paragraph 1, above, the United States and Relator DeGroat shall promptly sign and file a Joint Stipulation of Dismissal of the First Qui Tam Action pursuant to Rule 41(a)(1), with dismissal being with prejudice as to

Relator DeGroat, with prejudice to the United States only as to the Covered Conduct, and without prejudice as to the United States as to all other matters set forth in the First Qui Tam Action.

15. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except as provided in 31 U.S.C. § 3730(d).

16. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

17. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of New York. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

18. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

19. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

20. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21. This Agreement is binding on IronRod's successors, transferees, heirs, and assigns.

22. This Agreement is binding on Relator DeGroat's successors, transferees, heirs, and assigns.

23. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

24. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

*[signatures on following page]*

THE UNITED STATES OF AMERICA

DATED: 1/31/2023        BY: _____
                            DAVID M. CORIELL
                            Assistant United States Attorney
                            Western District of New York

DATED: _____  BY: __LISA RE__ Digitally signed by LISA RE
                                        Date: 2023.01.23 08:30:22 -05'00'
                            LISA M. RE
                            Assistant Inspector General for Legal Affairs
                            Office of Counsel to the Inspector General
                            Office of Inspector General
                            United States Department of Health and Human Services

**BEYOND REPS, INC. (D/B/A) IRONROD HEALTH AND CARDIAC MONITORING SERVICES, LLC (COLLECTIVELY "IRONROD")**

DATED: _____  BY: _____
                            Andrew Nash
                            Chief Executive Officer

DATED: _____  BY: _____
                            Christopher B. Harwood, Esq.
                            Morvillo Abramowitz Grand
                            Iason & Anello PC
                            565 Fifth Avenue
                            New York, NY 10017
                            Counsel for IronRod

**COLEEN DEGROAT**

DATED: _____  BY: _____
                            Coleen DeGroat

DATED: _____  BY: _____
                            William L. Hurlock, Esq.
                            Mueller Law LLC
                            363 Bloomfield Avenue, Suite 2-C
                            Montclair, New Jersey 07042
                            Counsel for Coleen DeGroat

11

### THE UNITED STATES OF AMERICA

DATED: _____   BY: _____
                        DAVID M. CORIELL
                        Assistant United States Attorney
                        Western District of New York


DATED: _____   BY: _____
                        LISA M. RE
                        Assistant Inspector General for Legal Affairs
                        Office of Counsel to the Inspector General
                        Office of Inspector General
                        United States Department of Health and Human Services


### BEYOND REPS, INC. (D/B/A) IRONROD HEALTH AND CARDIAC MONITORING SERVICES, LLC (COLLECTIVELY "IRONROD")

DATED: 1/30/2023   BY: _____
                        Andrew Nash
                        Chief Executive Officer


DATED: 1/30/2023   BY: _____
                        Christopher B. Harwood, Esq.
                        Morvillo Abramowitz Grand
                        Iason & Anello PC
                        565 Fifth Avenue
                        New York, NY 10017
                        Counsel for IronRod


### COLEEN DEGROAT

DATED: _____   BY: _____
                        Coleen DeGroat


DATED: _____   BY: _____
                        William L. Hurlock, Esq.
                        Mueller Law LLC
                        363 Bloomfield Avenue, Suite 2-C
                        Montclair, New Jersey 07042
                        Counsel for Coleen DeGroat

11

THE UNITED STATES OF AMERICA

DATED _____  BY  _____
                         [illegible]
                         [illegible]
                         [illegible]

DATED _____  BY  _____
                         [illegible]
                         [illegible]
                         [illegible]
                         [illegible]
                         [illegible]

BEYOND REPS, INC. (D/B/A) IRONROD HEALTH AND CARDIAC
MONITORING SERVICES, LLC (COLLECTIVELY "IRONROD")

DATED _____  BY  _____
                         Andrew Nasr
                         Chief Executive Officer

DATED _____  BY  _____
                         Christopher B. Harwood, Esq.
                         Morvillo Abramowitz Grand
                         Iason & Anello PC
                         565 Fifth Avenue
                         New York, NY 10017
                         Counsel for IronRod

COLLEEN DEGROAT

DATED _____  BY  _____
                         Colleen DeGroat

DATED 1/25/23       BY  _____
                         William L. Harbeck, Esq.
                         Mueder Law LLC
                         363 Bloomfield Avenue, Suite 2-C
                         Montclair, New Jersey 07042
                         Counsel for Colleen DeGroat

17